FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 07, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SCOTT S., | No. 4:17-CV-05199-JTR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 21, 26. Attorney Chad L. Hatfield represents Scott S. (Plaintiff); Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Disability Insurance Benefits on January 14, 2014, Tr. 73, alleging disability since November 1, 2012, Tr. 165, due to arthritis

of the hips bilaterally, back pain, shoulder pain bilaterally, status post right shoulder surgery, lateral epicondylitis of the right elbow, and depression. Tr. 180. The application was denied initially and upon reconsideration. Tr. 100-06, 108-12. Administrative Law Judge (ALJ) Tom L. Morris held a hearing on March 16, 2016 and heard testimony from Plaintiff and vocational expert Michael Swanson. Tr. 40-72. The ALJ issued an unfavorable decision on June 27, 2016. Tr. 20-35. The Appeals Council denied review on October 20, 2017. Tr. 1-5. The ALJ's June 27, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff initiated this action for judicial review on November 27, 2017. ECF Nos. 1, 12.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 43 years old at the alleged date of onset. Tr. 165. He completed his GED in 1984 and completed a HVAC program in 1992. Tr. 181. His reported work history includes the job of HVAC service technician. Tr. 182. Plaintiff reported that he lost his job in November of 2012 because he "moved too slowly due to pain and could not perform all of the physical functions of the job." Tr. 181.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as

being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 404.1520(a)(4)(v).

## ADMINISTRATIVE DECISION

On June 27, 2016, the ALJ issued a decision finding Plaintiff was not

disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 1, 2012, the alleged date of onset. Tr. 22.

At step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; dysfunction of the major joints; and osteoarthritis of the hands. Tr. 22.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 24.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> he can only stand and/or walk for 2 hours in an 8-hour workday; sit for up to 8 hours in an 8-hour workday; occasionally climb, balance, stoop, kneel, crouch, and crawl; frequently reach overhead with the right upper extremity; and must avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights; there should be at least be (*sic.*) some contact with the supervisor during the work period at which time the person can receive any additional work-related instructions if needed; cannot work at a production-rate pace but can perform goal-oriented work; and would be off task 10% of the time over the course of an 8-hour workday due to pain.

Tr. 25. The ALJ identified Plaintiff's past relevant work as HVAC Service Technician and HVAC Technician and concluded that Plaintiff was not able to perform this past relevant work. Tr. 33.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of document preparer and addresser. Tr. 34. The ALJ concluded Plaintiff was not under a disability

within the meaning of the Social Security Act at any time from November 1, 2012, through the date of the ALJ's decision. Tr. 35.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh the medical source opinions; (2) failing to make a proper step two determination; (3) failing to properly address lay witness testimony; (4) failing to properly address Plaintiff's symptom statements; and (5) failing to make a proper step five determination.

## DISCUSSION[1]

**1. Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by treating physician Amy H. Britt, M.D. and occupational therapist Haley Van Ens, MORT L. ECF No. 21 at 8-12.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more

---

[1] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### A. Amy H. Britt, M.D.

On March 11, 2016, Dr. Britt penned a letter summarizing Plaintiff's treatment history and stating that he is "maintained on long acting narcotic pain medications which impair his cognition and render him unable to drive or do any detailed type work." Tr. 387. Dr. Britt then made the following statement:

> I certainly find Mr. Staples disabled and unable to work in any capacity and hope that you will consider his efforts to maintain employment as long as he was able to, as well as his efforts in seeking medical expertise and subjecting himself to expensive and painful procedures in hopes of decreasing his pain and regaining some kind of quality of life and award him disability benefits so he can rest at home with some reassurance that his family will not have such a financial burden.

Tr. 388. She also completed a Medical Report form listing Plaintiff's diagnoses as

low back pain, osteoarthritis, shoulder pain, elbow pain, wrist pain, and hand pain. Tr. 400. She again repeated her opinion that Plaintiff's narcotic medications caused cognitive slowing. *Id*. She further opined that if Plaintiff worked on a regular and continuous basis, his condition would deteriorate, stating he would have "worsening pain and [was] unable to do detail work on narcotics." Tr. 401. She found that if Plaintiff attempted to work a forty-hour week, he would likely miss an average of four or more days per month due to his medical impairments. *Id*. When asked to consider Plaintiff's medical condition and state her opinion regarding his ability to perform activities day to day on a sustained, competitive basis, she found Plaintiff to be "Severely limited," which his defined as "[u]nable to lift at least 2 pounds or unable to stand and/or walk." *Id*. She concluded her opinion by stating that Plaintiff "has tried very hard to continue to be employed by doing PT, surgeries, etc. At this point he has minimal physical abilities due to pain and deterioration of his joints and the effects of narcotics on his cognition." Tr. 402.

The ALJ first addressed Dr. Britt's March 11, 2016 letter stating that "an opinion on whether an individual is disabled goes to an issue reserved to the Commissioner and therefore cannot be given special significance, such opinion should still be considered in assessment of the claimant's residual functional capacity." Tr. 31. He then gave the opinion "little weight" for three reasons: (1) the opinion was inconsistent with Plaintiff's testimony that he could lift a gallon of milk with his left arm, stand, and walk; (2) the opinion was inconsistent with Dr. Britt's treatment notes that Plaintiff was looking for a job; and (3) the opinion was inconsistent with Plaintiff's orthopedic records. *Id*.

Plaintiff asserts that the ALJ was required to provide clear and conceiving reasons to reject the opinion, but failed to meet the lesser standard of specific and legitimate reasons. ECF No. 21 at 10-11. The Defendant asserts that the ALJ was required to provide specific and legitimate reasons for rejecting the testimony and

that the ALJ's reasons met this standard. ECF No. 26 at 4-5. The Court finds that the ALJ's reasons failed to meet the lesser standard of specific and legitimate.

The ALJ's first reason for rejecting the opinion, that it was inconsistent with Plaintiff's statements regarding his ability to lift a gallon of milk with his left arm, to stand, and to walk, is not specific and legitimate. A claimant's testimony about his abilities may be seen as inconsistent with the presence of a disabling condition. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). At the hearing, Plaintiff testified that he could not lift a gallon of milk with his right hand and only two or three times with his left hand before experiencing pain in his hand and elbow. Tr. 61. He stated he could stand in one place thirty to forty-five minutes before experiencing pain in his hips and back. Tr. 54. He further testified that after standing still that long, he generally has to lay down for an hour to an hour and a half. *Id*. He further testified that he tries to walk to collect the mail each day, Tr. 64, and that the mailbox is located a block and a half down the street, Tr. 67. Additionally, he stated that the day prior to the hearing, he walked to the store, which was "quite a workout" for him. *Id*. The ALJ's determination failed to state how Plaintiff's testimony regarding lifting, standing, and walking were inconsistent with Dr. Britt's conclusion that Plaintiff was severely limited. Dr. Britt's opinion was not that Plaintiff could never lift more than two pounds or never stand or walk, but that he could not perform these activities "day to day on a sustained, competitive basis." Tr. 401. Therefore, the ALJ's reason falls short of the specific and legitimate standard.

The ALJ's second reason for giving Dr. Britt's opinion little weight, that it was inconsistent with her treatment notes that Plaintiff was looking for a job, is not specific and legitimate. The Ninth Circuit has held that the fact that a claimant "tried to work for a short period of time and, because of his impairments, *failed*," should not be used to discredit him. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007). In fact, evidence that a claimant tried to work and failed may

support the claimant's allegations of disabling pain. *Id*. at 1038. Furthermore, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

On October 10, 2013 Plaintiff reported to Dr. Britt that he "was laid off a while ago and has been picking up some day jobs here and there but feels like he is unable to physically work the way he has been. His financial situation is pretty bad right now and paying for the visit and UDS have been difficult." Tr. 241. He further reported that he was looking for a job but was also considering applying for disability benefits. *Id*. Plaintiff filed for benefits in January of 2014. Tr. 73. Therefore, Plaintiff's report that working was difficult for him and he was considering applying for benefits three months prior to actually filing for benefits does not negate the opinion that he was unable to work during that time, but actually supports it. Similar to the Ninth Circuit's conclusion in *Lingenfelter*, that an attempt to work met with failure may actually support a claimant's alleged limitations, it supports a provider's opinion that a claimant is unable to sustain work on a competitive basis. Therefore, this reason is a not specific and legitimate reason to reject the opinion.

The ALJ's third reason for giving Dr. Britt's opinion little weight, that it was inconsistent with Plaintiff's orthopedic records, is not specific and legitimate. The ALJ concluded that the records from Tri Cities Orthopedics showed that Plaintiff was not as limited as Dr. Britt opined. Tr. 31. The ALJ did not cite to any specific objective evidence or provider statement, but only cited to the exhibit in its entirety. *Id*. The ALJ's general conclusion that the sixty page exhibit dated from June of 2015 through January of 2016 is inconsistent with Dr. Britt's opinion lacks the specificity required under *Magallanes* and *Embrey*. As such, it falls short of the specific and legitimate standard. This case must be remanded for the ALJ to properly address Dr. Britt's opinions.

Additionally, Defendant asserts that an ALJ may reject an opinion that is premised upon a claimant's discredited subjective complaints. ECF No. 26 at 5 (citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). However, the ALJ never found the opinion to be premised on Plaintiff's discredited statements. Tr. 31. Therefore, this amounts to a *post hoc* rationalization that the Court will not consider. *See Orn*, 495 F.3d at 630 (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

### B. Haley Van Ens, MOTR L

Therapist Van Ens completed an Occupational Therapy Initial Evaluation on July 28, 2015. Tr. 358-59. The therapist found that Plaintiff's current functional limitations included a reduced grip strength in the right upper extremity and significant limitations in fine motor/dexterity on the right. Tr. 358. The therapist then recommend therapy once or twice a week for six weeks. Tr. 359.

Plaintiff asserts that the ALJ erred by failing to address Therapist Van Ens' opinion in his decision. ECF No. 21 at 11-12. Defendant argues that the ALJ did not error because this is not a medical source opinion. ECF No. 26 at 5-6. The ALJ relied on the evaluation to support his determination that Plaintiff was not as limited as he alleged, Tr. 30, but he did not address it as a medical opinion elsewhere in the decision.

A medical source opinion is defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).[2] First, an occupational therapist is not an acceptable medical

---

[2]At the time of the ALJ decision, the regulations defined a medical source opinion as "statements from physicians and psychologists or other acceptable

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

source as defined in 20 C.F.R. § 404.1502(a). Nonetheless, evidence from non-acceptable medical sources must still be considered by the ALJ. 20 C.F.R. § 404.1527(f). Second, the purpose of this evaluation was to discern Plaintiff's current functional limitations, set treatment goals, and design a treatment schedule. Tr. 359. While the evaluation reflects some judgments regarding Plaintiff's functional abilities, the purpose of the evaluation was not to set forth a functional opinion regarding what Plaintiff could still do despite his limitations in a work setting. Presumable, the goal was for Plaintiff to improve with treatment. While the evaluation is not a medical source opinion, the ALJ should, nevertheless, consider evidence from a non-acceptable medical source to the extent it addresses a claimant's "impairment severity and functional effects." *See* S.S.R. 06-03p, 2006 WL 2329939.[3]

---

medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. 404.1527(a)(2) (2016).

[3]On March 27, 2017, S.S.R. 06-03p was rescinded, but the policies addressed in S.S.R. 06-03p were intended to be codified in 20 C.F.R. § 404.1527(f). *See* Revisions to Rules Regarding the Evaluations of Medical Evidence, 82 Fed. Reg. 15132-01 (Jan. 18, 2017) available at 2017 WL 1105368. However, 20 C.F.R. § 404.1527(f) does not limit the value of the non-acceptable medical source's opinion to the "impairment severity and functional effects;" instead, it states that the opinions of non-acceptable medical sources "may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources." Under 20 C.F.R. § 404.1527(a), opinions from acceptable medical sources may address "the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you

**2.     Step Two**

Plaintiff argues that the ALJ failed to find all of his impairments severe at step two. ECF No. 21 at 12-13.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 404.1522(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks omitted). A claimant's own statement of symptoms alone will not suffice. *See* 20 C.F.R. § 404.1521.

Plaintiff asserts that his degenerative changes of his hip joints, tendonitis of bilateral shoulders, left shoulder impingement, tear, and supraspinatus peritendinitis, bilateral epicondylitis, sciatica, insomnia, migraines, anxiety and depression should have been found severe at step two. ECF No. 21 at 12-13. In his decision, the ALJ found Plaintiff's severe impairments to include degenerative disc disease of the lumbar spine, dysfunction of the major joints, and osteoarthritis of the hands. Tr. 22. Arguably, the ALJ's inclusion of "dysfunction of the major joints" in his step two determination may include Plaintiff's hips and shoulders. However, without specifically stating which joints are affected, it is impossible for

---

can still do despite impairment(s), and your physical or mental restrictions." While this change potentially opens the door for more value to be placed on non-acceptable medical source opinions, it does not change the ultimate ruling in the case, which is that the ALJ is required to consider the opinion of Therapist Van Ens on remand.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 12

the Court to review the ALJ's determination to discern which impairments were actually considered by the ALJ in forming the residual functional capacity determination. Therefore, upon remand, the ALJ will identify each impairment specifically, i.e. by the joint affected.

### 3. Lay Witness Testimony

Plaintiff challenges the ALJ's treatment of the evidence presented by Plaintiff's spouse. ECF No. 21 at 13-15.

Lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006); 20 C.F.R. § 404.1513(d)(4); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). An ALJ must give "germane" reasons to discount evidence from such "other sources." *Dodrill*, 12 F.3d at 919.

The ALJ considered the function report completed by Plaintiff's spouse in February of 2014 but found that it was not given under oath and it was not unbiased because she lived with Plaintiff and "could be motivated by a desire to increase the household income." Tr. 32.

Plaintiff's spouse's statement was made on an agency supplied function report form, which does not require that the statements be attested to under oath. Tr. 188-95. Other districts in this circuit have held that an ALJ may not reject lay witness statements on the grounds that they were not made under oath. *Taylor v. Colvin*, 2016 WL 704352 at *16 (E.D. Cal. Feb. 23, 2016); *Smith v. Astrue*, 2011 WL 3962107 at *11 (C.D. Cal. Sept. 8, 2011); *Anderson v. Colvin*, 2014 WL 4904868 at *8 (D. Ariz. Sept. 30, 2014); *Gray v. Astrue*, 2012 WL 4097762 at *7 (D. Idaho Sept. 17, 2012). Likewise, the Ninth Circuit has found that rejecting lay witness testimony on the grounds that it was not taken under oath, may amount to error. *See Hanes v. Colvin*, 651 Fed. Appx. 703, 705 (9th Cir. 2016) (finding that

if it were error, it was harmless in this case). This Court agrees with the other districts on this point and finds that it was error for the ALJ to reject the evidence on the function report because the statements were not made under oath.

Additionally, this Court rejects the ALJ's assumption that since the statements came from Plaintiff's spouse, that her motivation was suspect. The Ninth Circuit has found that the fact that a lay witness is a family member cannot be a reason for rejecting her testimony. *Smolen*, 80 F.3d at 1289. Here, the ALJ found no evidence that the statements on the function report were made falsely due to secondary motivation besides the fact that the evidence was supplied by Plaintiff's spouse. Tr. 32. The ALJ addresses Plaintiff's testimony regarding his fears that they may lose their house due to financial difficulties, but this is Plaintiff's statements and not those of his wife. *Id*. Therefore, this is not a germane reason to support a rejection of this evidence. Upon remand, the ALJ will properly consider and address the statements of Plaintiff's spouse.

### 4. Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were not entirely consistent with the medical evidence and other evidence in the record. ECF No. 21 at 15-17.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical

evidence and other evidence in the record. Tr. 32. The ALJ reasoned that Plaintiff's symptom statements were not supported by the objective evidence and that Plaintiff had made inconsistent statements about his ability to walk. *Id*.

The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. § 416.929(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to address the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements is necessary.

**5.     Step Five**

Plaintiff alleges that the ALJ erred at step five by relying on testimony by a vocational expert premised upon an incomplete hypothetical residual functional capacity. ECF No. 21 at 17-20. Since the case is being remanded for the ALJ to readdress Dr. Britt's opinion, a new residual functional capacity determination will be required, along with new determinations at steps four and five.

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant

disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to properly address the medical opinions in the file, to make a new and specific step two determination, to properly address the statements of Plaintiff's spouse, to properly address Plaintiff's symptom statements, to make a new residual functional capacity determination, and to make new step four and step five determinations. The ALJ will supplement the record with any outstanding evidence and call an orthopedic expert and a vocational expert to testify on remand.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 26**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED December 7, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE